[Civil No. 1611.   Filed December 14, 1918.]

[176 Pac. 587.]

PHOENIX SAFETY INVESTMENT COMPANY, a Corporation, Appellant, v. WILLIAM R. MICHAELS, W. R. CLEMANS, MAUDE CLEMANS, His Wife, G. R. YOUNG, W. A. YOUNG, W. J. MERVYN and L. W. STILWELL, as Trustee in Bankruptcy of the Estate of W. A. COFFMAN, Bankrupt, Appellees.

1. TRIAL—SPECIAL INTERROGATORY—ASSUMPTION OF MATTER IN DISPUTE.—A special interrogatory assuming a matter in dispute is erroneous.

2. APPEAL AND ERROR—INVITED ERROR—RIGHT TO COMPLAIN.—Where a special interrogatory was given at the request of appellant, he cannot assert on appeal that it was erroneous and ground for new trial.

3. BILLS AND NOTES—HOLDERS IN DUE COURSE.—The indorsee of a note may be a holder in due course, though he knew the consideration for' the note was an executory contract, if he had no notice the contract had been broken.

4. BILLS AND NOTES—ACTIONS—EVIDENCE.—In an action on a note the consideration for which was an executory contract, evidence *held* not to warrant a finding that the contract had been broken before the note was transferred to plaintiff, an indorsee.

5. BILLS AND NOTES—ACTIONS—INSTRUCTIONS.—In an action on a note the consideration for which was an executory contract, instructions submitting the question whether the contract had been broken before plaintiff purchased the note from the original payee *held* not warranted.

6. BILLS AND NOTES—BONA FIDE PURCHASER—FRAUD.—While it is not fraud to buy negotiable.paper for less than its face value, it may under some circumstances be evidence of fraud.

7. BILLS AND NOTES—BONA FIDE PURCHASER—FRAUD.—Fraud in obtaining a note by the payees from the maker can in no way impress the transaction between the payees and a purchaser unless the purchaser had notice thereof.

8. BILLS AND NOTES—ACTIONS—INSTRUCTIONS.—In an action on a note which plaintiff purchased from the payees at a discount, an instruction that fraud in obtaining a note may be proved by circumstantial evidence, and that the question whether the heavy rate of discount amounted to fraud, etc., was for the jury, *held* erroneous and misleading.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Reversed and remanded.

Messrs. Baker & Baker, for Appellant.

Mr. M. J. Dougherty and Mr. F. H. Swenson, for Appellees.

ROSS, J.—The appellant as indorsee sued the appellee Michaels to recover on the latter's negotiable promissory note dated July 22, 1914, for the sum of $1,500, and due one year and five months from date; and to foreclose a real mortgage given to secure the note. The appellee, in his answer, acknowledges the execution and delivery of the note and mortgage to the payees, Albert P. Fuller and Jessee L. Entrekin, well drillers, as payment to them for an agreement to drill a well and install a pumping plant on appellee's land situated in Maricopa county.

Appellee pleaded as a defense failure of consideration, based upon a breach of the contract to sink the well and install the pumping plant, and fraud in the procurement of the note by the payees; also, that the assignment of the note and mortgage to appellant was without consideration.

The case was tried to a jury to which one special interrogatory was propounded, as follows:

"Did the plaintiff, at the time it purchased the note and mortgage in question, have any knowledge of the previous breach by the said A. P. Fuller and Jessee L. Entrekin, or either of them, of the contract for the digging of the well entered into between them, the said Fuller and Entrekin, and the said defendant, William R. Michaels, or of any failure of the said Fuller and Entrekin, or either of them, to perform any of the conditions of said contract on their part to be performed?"

The interrogatory was answered in the affirmative, whereupon the court entered judgment in favor of the appellee.

The appellant assigns as error the propounding of this question, and the giving of several instructions to the jury. The interrogatory is criticised because it assumed the breach of the contract as established and because it calls for a conclusion of law. We think the criticism is well taken; but, since the question seems to have been requested by the appellant, he

XX Ariz.—3

cannot now be allowed to say that it was error and ground for a new trial.   One who causes the court to commit error should not be permitted to take advantage of it to undo what was done as a result.

The instructions complained of were all given to fit the theory of appellee that the payees had secured the note and mortgage through fraud; that the consideration for the note and mortgage had failed before the appellant became the owner thereof, or, in other words, that the breach of the contract to sink well and install pumping plant had occurred before the transfer of the note and mortgage; and that the appellant had notice of this breach when it took the note and mortgage.   One of the assignments of error is that the evidence does not sustain the judgment for the reason that there was no evidence that the contract to drill, etc., was breached before the appellant purchased the note and mortgage, and, if this assignment is true in fact, the instruction based upon the theory that the consideration for the note had failed before the appellant became the owner of the note, and that the appellant had notice thereof, was erroneously given.

The appellant purchased the note and took an assignment of the mortgage on October 21, 1914, paying therefor $500. However, on July 25, 1914, appellant loaned to payees $250 and took the note as security.   A little later, date not stated, appellant advanced $200 more on the same terms, making $950 paid for the note.

According to the appellee's answer, the payees of the note had until December 1, 1914, in which to complete the contract—that is, to drill the well according to the terms of the contract and install a pumping plant—and, of course, he is bound by this pleading.

The contract to drill, etc., is in writing and names October 1, 1914, as the date for completion; but this date evidently was not relied upon, since a different date is named and fixed in the answer, and the appellee, as a witness stated:

"I extended the time for him to complete the contract to November 1, 1914. . . . The time run out, and I extended it to 30 days longer thinking they would finish.   I extended the time and continued it to December 1, 1914. . . . Wylie (general manager of appellant) did not get the note until after the contract was extended."

In another place appellee says payees wanted a note they could use, as the original was in Dr. Wylie's safe and he in California, and he gave them a duplicate with the understanding that either the original or duplicate would be returned back later; learned at that time that the original had been pawned to appellant for $400. This was before Fuller and Entrekin had quit drilling. He said:

"I did not know what Entrekin wanted when I gave him the duplicate note, only he said he could not use the other. He said he wanted it; he probably could put it up and borrow money. I believe he said that. After I made the first note, I made the duplicate so he could sell it."

The well was not completed and the pumping plant was not installed, and yet, according to the answer, these things could have been done any time up to December 1, 1914, without violating the terms of the contract.

Fuller and Entrekin, payees of the note, had entered upon the performance of their contract, and during July and August, and the early part of September, had sunk the well 150 feet deep. They were short of money, which they endeavored to supply by negotiating this note, and the appellant refrained from demanding the return of the note and declaring the contract forfeited, but, on the contrary, issued and delivered to the payees a duplicate thereof with the understanding that they were trying or going to sell the same. According to the appellee's own admission, he did this after he knew appellant had accepted the note as security for the $450 advanced the payees.

The jury's answer to the interrogatory finds no support in the evidence, nor was there any evidence justifying instructions submitting the question as to whether Fuller and Entrekin had breached their contract before appellant bought the note, as the pleadings and evidence both agree that they had until December 1, 1914, to complete the contract; whereas, the note was transferred to appellant not later than October 21, 1914, and possibly as early as July 25, 1914, although the evidence is not clear on this point.

That such instructions were calculated to mislead the jury, and therefore prejudicial, is too apparent. The indorsee of a promissory note may be a holder in due course notwithstanding the consideration for the note was known by him to be an executory contract, providing he had no notice that the con-

tract had been breached before he became such holder. If he, however, had notice of the breach, and therefore of the failure of the consideration at the time he purchased it, the note in his hands was subject to the same defenses as would have been open to the maker as against the payees. 8 C. J. 509, §§ 718 and 719; 3 R. C. L. 1023, § 231.

The appellant also assigns as error the giving of the following instruction:

"The court instructs the jury that fraud in obtaining a negotiable instrument may be proved by circumstantial evidence, and that the question of whether or not the purchase of a note at a heavy rate of discount amounted to fraud on the part of the purchaser is a question for the jury to determine upon all the circumstances involved in the case."

That charge, we think, is equivalent to telling the jury that the mere circumstance of a heavy rate of discount might amount to fraud on the part of appellant; for, if the discount happened to be the only circumstance impugning the transaction, then it was "all the circumstances involved in the case." It is not fraud to buy a piece of commercial paper for less than its face value; it may, under some circumstances, be some evidence of fraud, but that is all. 8 C. J. 508, section 717, states the law as follows:

"As already stated, the fact that the consideration for the transfer is less than the face value of the instrument does not affect the question whether the purchase is one for value. Furthermore, the mere fact that a note is purchased for an amount less than its face, or that an unusually large discount is accepted, is never of itself sufficient to charge the purchaser with notice of existing equities, unless the consideration is merely nominal. However, inadequacy is always a fact to be considered by the jury as evidence of bad faith, and may, with suspicious circumstances, authorize a finding of bad faith, especially if the consideration is grossly inadequate. The merits of each case must be determined by its particular facts and circumstances; and if it appears that the instrument is of depreciated value in the commercial world, and not considered desirable from the standpoint of an investor, if the financial stability of the primary obligors is doubted, or if it does not appear that the purchase was made for the purpose of speculating on the chances of its collection, an otherwise

unfair consideration should not charge the purchaser with notice of equities.''

Fraud in ''obtaining the note'' by the payees from the maker could in no way impress the transaction between the payees and the appellant; unless the appellant had notice thereof. The jury might very reasonably have concluded from this instruction that fraud in the inception of the note, if proved, together with the heavy discount, was a sufficient circumstance to authorize their returning a verdict against the appellant. This especially since the question of fraud in the pleadings and in the evidence was directed at the payees in obtaining the note, and not against the appellant.

Judgment is reversed and cause remanded for new trial.

CUNNINGHAM, C. J., and JOHN WILSON ROSS, J., concur.